UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALVARO MORALES,<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | )<br>)<br>)<br>)<br>)<br>) Case No. 04-40172-NMG<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF FAZAL BHATTI, M.D.

I, Fazal Bhatti, hereby declare and state as follows:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons as a Medical Officer, at the Federal Medical Center (FMC), Devens, Massachusetts. I am Board Certified in Internal Medicine and I am licensed as a physician in the State of Virginia. I have been employed in this position with the Federal Bureau of Prisons since February, 2002.

2. As a Medical Officer, I have access to records maintained in the ordinary course of business at FMC Devens. I am familiar with inmate Alvaro Morales, Register Number 42152-004, the Petitioner in the above-captioned civil action. I have been advised that inmate Morales has filed a petition alleging that he suffers from an inoperable heart condition "which will soon fail." He claims that he requires a heart transplant, a procedure that he states is unavailable to him while he is in the custody of the Bureau of Prisons. As relief, he seeks to be released so that he can arrange for a heart transplant.

3. The factual information set forth in this declaration is obtained from (and summarizes) the medical records maintained by FMC Devens.

4. Inmate Morales is a 67 year old Hispanic male inmate who was transferred to FMC Devens on May 29, 2002 from the Federal Correctional Institution (FCI) at Fort Dix, New Jersey. The medical record indicates that a medical intake screening was completed upon his arrival in the Receiving and Discharge unit with inmate Morales by a certified mid-level practitioner. Inmate Morales arrived at FMC Devens with the following reported

diagnoses:

    a. Colorectal Cancer;
    b. Hypertension;
    c. Idiopathic Cardiomyopathy;
    d. Aortic Insufficiency.

5. Medical records indicate that while inmate Morales was incarcerated at FCI Fort Dix, he underwent a colonoscopy on April 17, 2002 for a history of rectal bleeding. This procedure was performed at St. Francis Medical Center in Trenton, New Jersey. On April 22, 2002, he also underwent a left heart coronary angiogram and aortography to evaluate further his diagnosis of aortic insufficiency and congestive heart failure.

6. According to medical records, the earliest finding of aortic insufficiency was apparently established on an echocardiogram dated September 10, 1996 where inmate Morales was noted to have moderate aortic insufficiency and severe impairment of left ventricular systolic function in addition to other valve abnormalities.

7. The biopsy results obtained from the April 17, 2002 colonoscopy was reported by Pathology as being invasive adenocarcinoma. At this point, inmate Morales was referred for a surgical and cardiac consultation in anticipation of surgery. The remainder of the work up was not indicative of metastatic cancer. During this hospitalization, Cardiology and Cardiothoracic surgery advised of the need for inmate Morales to undergo aortic valve repair after the colon surgery. On April 24, 2002, inmate Morales was discharged from St. Francis Medical Center for further management at a Bureau of Prisons facility.

8. Inmate Morales arrived at FMC Devens on May 29, 2002, and was subsequently seen by the Cardiologist on June 27, 2002 for pre-operative cardiac clearance. He was seen by surgery on July 10, 2002 and was scheduled for a colon resection. Additionally, a pre-operative CT scan of the abdomen and pelvis was ordered. The CT scan showed diverticulosis and findings suggestive of a tumor in the sigmoid region.

9. On August 5, 2002, inmate Morales was admitted to the University of Massachusetts Leominster Campus Hospital. In accordance with Cardiology recommendations a Swan-Ganz catheter was placed for perioperative monitoring. On August 6, 2002, he underwent a low inferior colon resection with a primary stapled anastomosis without complications. Inmate Morales was discharged on August 12, 2002 and was noted to have been ambulating well, tolerating regular meals, and having good pain control.

10. On October 10, 2002, inmate Morales had a repeat echocardiogram which was indicative of moderate to severe aortic regurgitation and enlarged cardiac chambers. He also had an evaluation by the Oncologist on October 22, 2002 . It was noted that he had no evidence of post operative metastatic disease and that in light of the successful surgery to remove

his colon cancer he did not require any chemotherapy.

11. On December 27, 2002, inmate Morales was seen by myself for complaints of chest pain and palpatations. After conferring with the Cardiologist, he was transferred to the Emergency Room at the University of Massachusetts Leominster Campus Hospital for further evaluation. He was monitored and further consultation with Cardiology was completed. On the same day, inmate Morales was then transferred back to FMC Devens and was advised to follow up with Cardiology.

12. On January 16, 2003, inmate Morales was seen by the attending Cardiologist and was advised to undergo a repeat coronary angiogram and Electrophysiology study.

13. On January 29, 2003, inmate Morales was hospitalized at the University of Massachusetts Memorial Medical Center for the above mentioned evaluations. During his hospital stay, inmate Morales underwent a repeat cardiac catheterization on January 29, 2003 which was consistent with a low ejection fraction and severe aortic regurgitation. However, he had no evidence of significant coronary artery disease.

14. Electrophysiology studies done on January 30, 2003 were negative for inducible arrhythmia. Cardiothoracic surgery evaluated inmate Morales and they felt that in light of his severe cardiac dysfunction that he was not a candidate for aortic valve replacement at the time. Inmate Morales was discharged from the University of Massachusetts Memorial Medical Center on January 31, 2003 and was transferred back to FMC Devens.

15. On January 31, 2003, inmate Morales was seen by myself in chronic care clinic where he reported that he was easily fatigued and inquired about wanting to be closer to family. Inmate Morales was made aware of all of the findings of his hospital work up and was also educated about his inquiry regarding compassionate release procedures in the BOP.

16. On February 20, 2003, inmate Morales was seen in reference to his request for compassionate release by the Clinical Social Worker at FMC Devens.

17. On February 27, 2003, inmate Morales was seen again by Cardiology at which point the impression was that the patient had findings of normal coronary arteries and a dilated left ventricle which meant that the inmate was not a good candidate for aortic valve replacement. Inmate Morales was advised to continue with the medical regimen and to consider pursuing compassionate release.

18. On June 3, 2003, inmate Morales was seen by myself where he was educated about his medical status. During this visit, inmate Morales complained of being easily fatigued but no new acute changes were noted. He was also given an update on the status of his compassionate release by the Clinical Social Worker. Inmate Morales was referred for a follow up visit with Surgery and Hematology/Oncology.

19. On July 2, 2003, inmate Morales was seen in consultation by the operating surgeon and was advised to undergo a surveillance colonoscopy which was requested.

20. On September 23, 2003, inmate Morales was seen by myself in chronic care clinic. He reported no new changes in his condition.

21. On November 21, 2003, inmate Morales was seen by my self in chronic care clinic at which time he was informed of findings on his screening colonoscopy. Inmate Morales reported that he still had exertional shortness of breath, but otherwise stated "my heart is good." In light of his stable medical status, no changes were made to his medical regimen.

22. On December 2, 2003, inmate Morales met with the Clinical Social Worker and received an update on the status of his request for Compassionate Release.

23. On January 16, 2004, inmate Morales was seen by consulting Oncologist where it was stated that he was doing well from an Oncological point of view.

24. On February 2, 2004, inmate Morales was seen by the mid-level practitioner and reported that he felt so-so but had no acute complaints.

25. On March 17, 2004, inmate Morales was seen by the Ophthalmologist and was scheduled for a routine follow up evaluation.

26. On April 22, 2004, inmate Morales was seen by myself in chronic care clinic. He stated that he felt tired and continued to complain of poor exercise tolerance. Inmate Morales was educated on diet and appropriate use of his medications. No new changes were made to his medical regimen.

27. On July 8, 2004, inmate Morales was seen by myself in chronic care clinic where he stated that he felt well and was trying to walk more. His medications were renewed, follow up labs were ordered and a referral for a routine Oncology follow up appointment was requested. On July 8, 2004, inmate Morales also had a follow up visit with Ophthalmology.

28. On September 21, 2004, inmate Morales was seen by myself in chronic care clinic where he stated that he felt "one day good, one day not so good." No new medication changes were made at this time. It was noted that he would require scheduling of a repeat screening colonoscopy at his next visit.

29. While at FMC Devens, inmate Morales has received consultation, assessment and treatment on numerous occasions from medical professionals. These providers have

included Staff Physicians, Mid-level Practitioners, Psychologist, Cardiologist, Oncologist, Ophthalmologist, Respiratory Therapist, and General Surgeon. While it is clear that inmate Morales has advanced cardiac disease related to valvular dysfunction and congestive heart failure, he has remained clinically stable since his arrival at FMC Devens. Inmate Morales is independent in his activities of daily living and is able to care for himself without difficulty. It is also important to note that inmate Morales resides in a housing area adjacent to the medical clinic where he has easy access to medical staff at any time of the day. This housing assignment is also in close proximity to all FMC Devens programs in light of his poor exercise tolerance.

30. In light of the above findings, it is premature to say at this point that inmate Morales requires an immediate cardiac transplant. He continues to be well maintained on his current cardiac medications. Should he experience a worsening of his cardiac status, the option of a referral to a Cardiologist and/or a Specialized Heart Failure Center is available for inmate Morales during his incarceration at FMC Devens.

31. Inmate Morales continues to function as well as can be expected with his diagnosis. His medical conditions will continue to be monitored on a regular basis as indicated. It is my opinion that FMC Devens can continue to provide the appropriate medical treatment for inmate Morales' medical diagnoses in the future.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Executed this 29th day of October, 2004.

Fazal Bhatti, M.D.
Medical Officer
Federal Medical Center
Devens, Massachusetts

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALVARO MORALES,<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | )<br>)<br>)<br>)<br>) Case No. 04-40172-NMG<br>)<br>)<br>)<br>) |

### DECLARATION OF FAZAL BHATTI, M.D.

I, Fazal Bhatti, hereby declare and state as follows:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons as a Medical Officer, at the Federal Medical Center (FMC), Devens, Massachusetts. I am Board Certified in Internal Medicine and I am licensed as a physician in the State of Virginia. I have been employed in this position with the Federal Bureau of Prisons since February, 2002.

2. As a Medical Officer, I have access to records maintained in the ordinary course of business at FMC Devens. I am familiar with inmate Alvaro Morales, Register Number 42152-004, the Petitioner in the above-captioned civil action. I have been advised that inmate Morales has filed a petition alleging that he suffers from an inoperable heart condition "which will soon fail." He claims that he requires a heart transplant, a procedure that he states is unavailable to him while he is in the custody of the Bureau of Prisons. As relief, he seeks to be released so that he can arrange for a heart transplant.

3. The factual information set forth in this declaration is obtained from (and summarizes) the medical records maintained by FMC Devens.

4. Inmate Morales is a 67 year old Hispanic male inmate who was transferred to FMC Devens on May 29, 2002 from the Federal Correctional Institution (FCI) at Fort Dix, New Jersey. The medical record indicates that a medical intake screening was completed upon his arrival in the Receiving and Discharge unit with inmate Morales by a certified mid-level practitioner. Inmate Morales arrived at FMC Devens with the following reported

diagnoses:

    a. Colorectal Cancer;
    b. Hypertension;
    c. Idiopathic Cardiomyopathy;
    d. Aortic Insufficiency.

5. Medical records indicate that while inmate Morales was incarcerated at FCI Fort Dix, he underwent a colonoscopy on April 17, 2002 for a history of rectal bleeding. This procedure was performed at St. Francis Medical Center in Trenton, New Jersey. On April 22, 2002, he also underwent a left heart coronary angiogram and aortography to evaluate further his diagnosis of aortic insufficiency and congestive heart failure.

6. According to medical records, the earliest finding of aortic insufficiency was apparently established on an echocardiogram dated September 10, 1996 where inmate Morales was noted to have moderate aortic insufficiency and severe impairment of left ventricular systolic function in addition to other valve abnormalities.

7. The biopsy results obtained from the April 17, 2002 colonoscopy was reported by Pathology as being invasive adenocarcinoma. At this point, inmate Morales was referred for a surgical and cardiac consultation in anticipation of surgery. The remainder of the work up was not indicative of metastatic cancer. During this hospitalization, Cardiology and Cardiothoracic surgery advised of the need for inmate Morales to undergo aortic valve repair after the colon surgery. On April 24, 2002, inmate Morales was discharged from St. Francis Medical Center for further management at a Bureau of Prisons facility.

8. Inmate Morales arrived at FMC Devens on May 29, 2002, and was subsequently seen by the Cardiologist on June 27, 2002 for pre-operative cardiac clearance. He was seen by surgery on July 10, 2002 and was scheduled for a colon resection. Additionally, a pre-operative CT scan of the abdomen and pelvis was ordered. The CT scan showed diverticulosis and findings suggestive of a tumor in the sigmoid region.

9. On August 5, 2002, inmate Morales was admitted to the University of Massachusetts Leominster Campus Hospital. In accordance with Cardiology recommendations a Swan-Ganz catheter was placed for perioperative monitoring. On August 6, 2002, he underwent a low inferior colon resection with a primary stapled anastomosis without complications. Inmate Morales was discharged on August 12, 2002 and was noted to have been ambulating well, tolerating regular meals, and having good pain control.

10. On October 10, 2002, inmate Morales had a repeat echocardiogram which was indicative of moderate to severe aortic regurgitation and enlarged cardiac chambers. He also had an evaluation by the Oncologist on October 22, 2002. It was noted that he had no evidence of post operative metastatic disease and that in light of the successful surgery to remove

his colon cancer he did not require any chemotherapy.

11. On December 27, 2002, inmate Morales was seen by myself for complaints of chest pain and palpatations. After conferring with the Cardiologist, he was transferred to the Emergency Room at the University of Massachusetts Leominster Campus Hospital for further evaluation. He was monitored and further consultation with Cardiology was completed. On the same day, inmate Morales was then transferred back to FMC Devens and was advised to follow up with Cardiology.

12. On January 16, 2003, inmate Morales was seen by the attending Cardiologist and was advised to undergo a repeat coronary angiogram and Electrophysiology study.

13. On January 29, 2003, inmate Morales was hospitalized at the University of Massachusetts Memorial Medical Center for the above mentioned evaluations. During his hospital stay, inmate Morales underwent a repeat cardiac catheterization on January 29, 2003 which was consistent with a low ejection fraction and severe aortic regurgitation. However, he had no evidence of significant coronary artery disease.

14. Electrophysiology studies done on January 30, 2003 were negative for inducible arrhythmia. Cardiothoracic surgery evaluated inmate Morales and they felt that in light of his severe cardiac dysfunction that he was not a candidate for aortic valve replacement at the time. Inmate Morales was discharged from the University of Massachusetts Memorial Medical Center on January 31, 2003 and was transferred back to FMC Devens.

15. On January 31, 2003, inmate Morales was seen by myself in chronic care clinic where he reported that he was easily fatigued and inquired about wanting to be closer to family. Inmate Morales was made aware of all of the findings of his hospital work up and was also educated about his inquiry regarding compassionate release procedures in the BOP.

16. On February 20, 2003, inmate Morales was seen in reference to his request for compassionate release by the Clinical Social Worker at FMC Devens.

17. On February 27, 2003, inmate Morales was seen again by Cardiology at which point the impression was that the patient had findings of normal coronary arteries and a dilated left ventricle which meant that the inmate was not a good candidate for aortic valve replacement. Inmate Morales was advised to continue with the medical regimen and to consider pursuing compassionate release.

18. On June 3, 2003, inmate Morales was seen by myself where he was educated about his medical status. During this visit, inmate Morales complained of being easily fatigued but no new acute changes were noted. He was also given an update on the status of his compassionate release by the Clinical Social Worker. Inmate Morales was referred for a follow up visit with Surgery and Hematology/Oncology.

19. On July 2, 2003, inmate Morales was seen in consultation by the operating surgeon and was advised to undergo a surveillance colonoscopy which was requested.

20. On September 23, 2003, inmate Morales was seen by myself in chronic care clinic. He reported no new changes in his condition.

21. On November 21, 2003, inmate Morales was seen by my self in chronic care clinic at which time he was informed of findings on his screening colonoscopy. Inmate Morales reported that he still had exertional shortness of breath, but otherwise stated "my heart is good." In light of his stable medical status, no changes were made to his medical regimen.

22. On December 2, 2003, inmate Morales met with the Clinical Social Worker and received an update on the status of his request for Compassionate Release.

23. On January 16, 2004, inmate Morales was seen by consulting Oncologist where it was stated that he was doing well from an Oncological point of view.

24. On February 2, 2004, inmate Morales was seen by the mid-level practitioner and reported that he felt so-so but had no acute complaints.

25. On March 17, 2004, inmate Morales was seen by the Ophthalmologist and was scheduled for a routine follow up evaluation.

26. On April 22, 2004, inmate Morales was seen by myself in chronic care clinic. He stated that he felt tired and continued to complain of poor exercise tolerance. Inmate Morales was educated on diet and appropriate use of his medications. No new changes were made to his medical regimen.

27. On July 8, 2004, inmate Morales was seen by myself in chronic care clinic where he stated that he felt well and was trying to walk more. His medications were renewed, follow up labs were ordered and a referral for a routine Oncology follow up appointment was requested. On July 8, 2004, inmate Morales also had a follow up visit with Ophthalmology.

28. On September 21, 2004, inmate Morales was seen by myself in chronic care clinic where he stated that he felt "one day good, one day not so good." No new medication changes were made at this time. It was noted that he would require scheduling of a repeat screening colonoscopy at his next visit.

29. While at FMC Devens, inmate Morales has received consultation, assessment and treatment on numerous occasions from medical professionals. These providers have

included Staff Physicians, Mid-level Practitioners, Psychologist, Cardiologist, Oncologist, Ophthalmologist, Respiratory Therapist, and General Surgeon. While it is clear that inmate Morales has advanced cardiac disease related to valvular dysfunction and congestive heart failure, he has remained clinically stable since his arrival at FMC Devens. Inmate Morales is independent in his activities of daily living and is able to care for himself without difficulty. It is also important to note that inmate Morales resides in a housing area adjacent to the medical clinic where he has easy access to medical staff at any time of the day. This housing assignment is also in close proximity to all FMC Devens programs in light of his poor exercise tolerance.

30. A cardiac transplant is not advised at this time for inmate Morales' condition. He is well maintained on cardiac medications and supportive care. Moreover, continued diagnosis and care by cardiac specialists is readily available to him if his condition changes or worsens.

31. Inmate Morales continues to function as well as can be expected with his diagnosis. His medical conditions will continue to be monitored on a regular basis as indicated. It is my opinion that FMC Devens can continue to provide the appropriate medical treatment for inmate Morales' medical diagnoses in the future.


I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Executed this __10__ day of November, 2004.

Fazal Bhatti, M.D.
Medical Officer
Federal Medical Center
Devens, Massachusetts